ARCHIBALD *v.* NEW YORK CENT. & H. R. R. Co.

*(Supreme Court, General Term, Fifth Department.*    June 2, 1891.)

RAILROAD COMPANIES—FENCING TRACK—SUFFICIENCY OF FENCE.

In an action against a railroad company for injuries to plaintiff's horse, it appeared that the horse had gone on the track from the field in which it was pastured. The fence constructed by defendant along its right of way was made by setting posts six feet apart, and along the posts were strung six strands of fence wire. The alternate posts were old ties which had become unsound and unfit for their original use.  Along the top of the posts, and on the side towards the track, a board was nailed, and on top of the posts. and on the edge of such board, another board was nailed.  The boards were made by sawing old fencing plank in strips.  On the morning after the accident the side and cap boards were found on the ground, broken in two.  The nails were drawn from the posts, but remained in the boards. The staples securing the wire to the middle post were all drawn, and some of those on the side posts were drawn, allowing the wire to sag down in the middle.  *Held*, that the evidence was sufficient to sustain a finding that the fence was inadequate in strength.

Appeal from judgment on report of referee.

Action by Honora Archibald against the New York Central & Hudson River Railroad Company.  From a judgment entered on the report of a referee appointed by the county court of Monroe county, in a case appealed to that court for a new trial from a judgment of a justice of the peace, defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER, J.

*Albert H. Harris,* for appellant.  *John E. Robson,* for respondent.

MACOMBER, J.   The plaintiff's horse, of the value $150, which was pastured upon lands adjoining the defendant's railroad, escaped from the pasture over or through a fence maintained by the company, and, while upon the company's property, was hit by one of its engines, and so seriously injured as that it was of no value thereafter.   This action is brought to recover damages for the injuries to this horse, and the right to recover is based upon the claim that the defendant did not maintain a sufficiently strong fence between the pasture lot and its own lands to prevent the horse, which is shown to have been of a peaceable disposition, from getting upon the tracks of the defendant.   The answer is a general denial.   The defendant maintains its railroad through the plaintiff's premises in the town of Rush, in Monroe county.   In the year 1885 it erected a fence on the south side of its tracks, and along the line of that portion of the plaintiff's premises used by her as a pasture for this and other horses, by setting posts twelve feet apart, and stretching along five strands of wire fastened by staples about one and a half inches in length.   The plaintiff's horse was injured the 1st day of July, 1890.   One year before this time the defendant rebuilt the fence in question by taking off the wires, and setting in between the posts already set a common cedar fence post, so that the posts in the fence thus reconstructed stood six feet apart from center to center. Upon the posts thus set six strands of double twisted wire were stretched on the frame side of the fence, fastened by staples one and one half inches in length. These cedar posts consisted of old ties that had lain in the railroad bed for many years until they had become unfit for their original purpose, and they had, by exposure and use, become decayed and unsound to a considerable extent.   Above the barb-wire, and at the top of the posts on the railroad side of the fence, the defendant had nailed a board four inches in width and one inch in thickness for a side board, and upon the edge of the board thus nailed, and upon the top of the posts, there was nailed another board, of the same width and thickness, for a cap board.   These boards were made by sawing an old hemlock fence board into two strips of equal width, and they were fastened upon the posts by about an equal number of eight-penny and ten-penny nails.   On the morning after the accident, at a place in this fence where the horse

escaped upon the defendant's track, the cap and side boards were entirely detached from the fence, and lay upon the ground broken in two pieces, while the nails drawn from the end and center posts remained in the boards. The wires were all loosened from the center post, and some of them from the posts on either side of the center post, and were sagged down in the center, 13 staples with which the wires were attached to the post being entirely drawn out. Upon these facts a recovery was had in pursuance of the report of the referee. It was held by the learned referee that the height of the fence was sufficient, but that it strength was inadequate as a fence designed to turn peaceably disposed animals. We think, from the whole evidence, that the conclusion of the referee was correct.

The finding that the posts at the place where the horse escaped were much decayed, and that they would not hold the nails used in nailing on the boards in case any considerable pressure was used upon them from the land side of the fence, was not excepted to by the defendant's counsel. We assume that, by the expression used in the finding, "considerable pressure," there was meant the ordinary pressure which might be expected to be applied to the fence by orderly and peaceably disposed animals in the adjacent lot. If this assumption be correct, it would seem necessarily to follow that the plaintiff's right to recover had been established. The learned counsel for the defendant, however, has excepted to other findings to the effect that these cedar posts, formerly ties, had become unsound; that the board four inches wide on the railroad side of the fence was but one inch in thickness; and that this board, together with the top board, were fastened upon the posts by about an equal number of eight-penny and ten-penny nails. In respect to the first exception, the evidence seems to be entirely against the contention of counsel for the appellant. In respect to the two others, regarding the thickness of the boards and the number of eight-penny and ten-penny nails used in fastening them, the findings, under the other established facts in the case, are not important. It is quite evident that the finding that the board was of an inch thickness was an inference from the evidence, rather than an item of direct testimony, as was also the conclusion in respect to the number of eight-penny and ten-penny nails. But, whether the learned referee was accurate and precise in his deduction in respect to these matters, it is apparent from the whole case, as the referee has found in another finding not excepted to, that the nails used in fastening the boards to the posts were not, all of them, of the size and length commonly used in the erection of division fences having cedar posts for supports, which are shown to require longer nails than posts of many other kinds of wood. For these reasons we think the judgment appealed from should be affirmed, with costs.